IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOHNA L. MATUSICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:14CV63 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Johna Matusick, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff filed her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on June 28, 2010 and April 18, 2011, respectively. (Tr. at 190-204.)[1] Her DIB application, which alleged a disability onset date of June 11, 2010, was denied initially and upon reconsideration. (Tr. at 84-129.) Thereafter, Plaintiff

---
[1] Transcript citations refer to the Sealed Administrative Transcript of Record [Doc. #s 6-8].

requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 131-32.) At the hearing, the ALJ considered both the application for DIB and SSI. Following the subsequent hearing on September 4, 2012 (Tr. at 38-83), the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act (Tr. at 16-37). On December 6, 2013, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

2

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: bipolar disorder, anxiety disorder, obesity, sleep apnea, degenerative disc disease of the cervical and lumbar spines, degenerative joint disease of the right knee and right shoulder, status post remote reconstructive surgery of the left ankle, and mild to moderate carpal tunnel syndrome. (Tr. at 21.) The ALJ found at step three that these impairments did not meet or equal a disability listing. (Tr. at 23.) Therefore, he assessed Plaintiff's RFC and determined that Plaintiff could perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following additional limitations:

> [S]he can stand and/or walk for no more than two hours and can never climb ladders, ropes, or scaffolds or crawl. In addition, she can frequently climb

> ramps and stairs, balance, kneel, and perform fine and gross manipulation, but is limited to occasional stooping, crouching, and overhead reaching. She must avoid concentrated exposure to hazards. Finally, the claimant is limited to simple, routine, repetitive tasks, in that she can apply common sense understanding to carry out oral, written, and diagrammatic instructions, and she can tolerate frequent contact with the public and co-workers.

(Tr. at 24-25.) At step four of the analysis, the ALJ found, based on the testimony of a vocational expert, that Plaintiff's past relevant work exceeded her RFC. However, the ALJ determined at step five that Plaintiff could perform other jobs that exist in significant numbers in the national economy and therefore was not disabled. (Tr. at 29-30.)

Plaintiff now argues that, in determining her RFC, the ALJ failed to evaluate the opinion of Plaintiff's surgeon, Dr. Bruce Jauffman, in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c), better known as the "treating physician rule." The treating physician rule generally requires an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record," it is not entitled to controlling weight. See Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2; 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided

in 20 C.F.R. § 416.927(c)(2)(i)-(c)(6) and § 404.1527(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

Where an ALJ does not give controlling weight to a treating source opinion, she must "give good reasons in [her] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

Finally, even if an opinion by a treating physician is given controlling weight with respect to the nature and severity of a claimant's impairment, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. §§ 404.1527(d) and 416.927(d).

In the present case, Dr. Jauffman performed Plaintiff's cervical fusion surgery in July 2009.[4] His opinion consists of a single-page form entitled "Questionnaire to Physician Regarding Cervical Spine Disorders," which Dr. Jauffman completed on July 13, 2012. On this form, Dr. Jauffman indicated that Plaintiff's pain was severe and "prevents her from [performing] physical labor." (Tr. at 774.) He noted that she "[p]reviously worked as a CNA (required lifting, pushing, etc.)." He further opined that Plaintiff could stand and sit no more than 30 minutes at a time, could lift no more than five pounds, even occasionally, and could only move her neck to a limited extent. (Id.) Dr. Jauffman further noted that Plaintiff "will require myelogram, NCV's [nerve conduction velocity tests], R Shoulder MRI." (Tr. at 774.) Those tests were ordered during the July 13, 2012 appointment. (Tr. at 776.)[5] The ALJ explicitly considered Dr. Jauffman's opinion and assigned it "some weight," particularly to the extent it supported a limitation to sedentary work. However, the ALJ found that "some of the limitations imposed by Dr. Jauffman were based on the claimant's subjective complaints, not objective findings." (Tr. at 29.)

Plaintiff now argues that "[t]his statement constitutes deficient analysis of Dr. Jauffman's opinion under the law." (Pl.'s Br. [Doc. #13] at 5.) She further contends that

---

[4] After the surgery, Plaintiff was cleared to return to work in August 2009, and she went back to work until June 2010, when she decided she could no longer do her job as a CNA. (Tr. 26, 239, 766.) Dr. Jauffman saw Plaintiff for post-surgery follow-up from August to October 2009, and physician's assistant notes from Dr. Jauffman's office also reflect additional appointments in January and February 2010. From the medical records provided, it appears that Dr. Jauffman next saw Plaintiff when he completed the form at issue in July 2012.

[5] In his appointment note for that visit, Dr. Jauffman stated, "I did fill out a form for her for Social Security Disability. She works as a CNA and because of all her symptoms and medications she is unable to return to that level at this point in time. She also has decreased range of motion and pain in her right shoulder, and I would like to obtain the following studies. The patient states she would like me to be as aggressive as possible, so I will order an MRI of her right shoulder as well as a total myelogram to see if there is any nerve root impingement. She should also have EMGs and nerve conduction studies of that right upper extremity. I will see her back following those studies." (Tr. at 778.)

objective findings do, in fact, support Dr. Jauffman's opinion. In particular, Plaintiff cites pre-surgery 2008 MRI results showing bilateral foraminal stenosis, and a March 2012 MRI revealing moderate foraminal stenosis at C-5 through C-7. Plaintiff also cites evidence of a limited range of motion in her cervical spine, and "painful dysesthesias and paresthesias in her upper extremities." In addition, Plaintiff notes consultative examiner Ramnick Zota's observation that she "had difficulty with sitting, standing and walking" during her August 21, 2010 evaluation. (Id. at 7-8 (citing Tr. at 617).)

The ALJ's decision reveals that he considered all of the evidence highlighted by Plaintiff, but did not find that this evidence, or the objective evidence as a whole, supported the level of limitation opined by Dr. Jauffman. Significantly, the ALJ acknowledged that Plaintiff had significant sitting, standing, and walking restrictions by limiting her to sedentary work with further restrictions to standing and/or walking no more than two hours in an eight hour day. (Tr. at 24.) The ALJ also noted MRI results showing neural foraminal narrowing bilaterally at C4-C5, as well as lumbar MRI results demonstrating multilevel lumbar spondylosis. (Tr. at 27.) However, his decision further recounts that (1) no root or spinal cord compression was apparent from those tests (Tr. at 27, 454, 660) and that (2) Plaintiff reported a significant level of pain control through steroid injections as well as a combination of narcotic and non-narcotic pain medications (Tr. at 27; see also Tr. at 706, 708, 712, 719, 721, 729, 733, 734, 735, 737, 740, 744, 745, 746, 747)).

Although Plaintiff asserts that her pain control measures were not always effective, nor did they provide long-lasting relief (Pl.'s Br. at 7 (citing Tr. at 621, 714)), the ALJ specifically found Plaintiff's statements concerning the intensity, persistence, and limiting

9

effects of her pain and other symptoms less than credible (Tr. at 25). In pertinent part, the ALJ determined that "the record contains numerous references to medication non-compliance, lost prescriptions and/or medication, cocaine use, and violation of controlled substance agreements." (Tr. at 28.) Most notably, the results of Plaintiff's urine drug screens on multiple occasions indicated that she was not taking her narcotic pain medications or Oxycodone as prescribed (or at all), despite her complaints. (Tr. at 28; see also Tr. at 546, 549-53, 748-52). In addition, the ALJ found that "[o]n August 24, 2010, Dr. Skeen, the claimant's pain management physician, noted that her disability application indicated that there could be 'secondary gain from treatment failure.'" (Tr. at 28 (citing Tr. at 628).) Plaintiff does not challenge the ALJ's credibility finding in her current lawsuit. Ultimately in this case, the ALJ determined that Dr. Jaufmann's opinion was entitled to less weight to the extent it was based only on Plaintiff's subjective complaints of pain, and the ALJ then gave reasons for concluding that those subjective complaints of pain were less than credible. Thus, the ALJ has provided a sufficient explanation for giving less weight to Dr. Jaufmann's opinion in that regard.

Moreover, despite finding that "the foregoing instances undermine[d] the credibility of the claimant's statements across the board," the ALJ assessed an RFC which included greater physical restrictions than those included in either of the other medical opinions issued in this case.[6] The ALJ based these additional limitations, in part, on Plaintiff's statements, as well as Dr. Jauffman's opinion. (See Tr. at 24-25, 28-29, 92-92, 112-14, 774.)

---

[6] The ALJ assigned little weight to the RFC assessment of state agency medical consultant Ellen Huffman-Zechman, M.D., who opined that Plaintiff could perform medium work, and assigned significant weight to the assessment of state agency medical consultant Melvin Clayton, M.D., who found Plaintiff limited to sedentary work without many of the postural restrictions the ALJ ultimately included in his RFC assessment.

10

These additional postural limitations included only occasionally performing overhead reaching, never crawling, and never climbing ladders, ropes, or scaffolding. Thus, contrary to Plaintiff's assertion, the ALJ's decision explained which of Dr. Jauffman's findings he accorded weight in a way that allows meaningful judicial review, and the ALJ's treatment of Dr. Jauffman's opinion was supported by substantial evidence.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for a Judgment Reversing the Commissioner [Doc. #12] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #15] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 10th day of July, 2015.

                                                /s/ Joi Elizabeth Peake
                                                United States Magistrate Judge